IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| CIPRIANO VARGAS, | : | MOTION TO VACATE |
|    Movant, | : | 28 U.S.C. § 2255 |
| | : | |
| v. | : | CRIMINAL ACTION NO. |
| | : | 1:16-CR-00193-SCJ-CCB-1 |
| | : | |
| UNITED STATES OF AMERICA, | : | CIVIL ACTION NO. |
|    Respondent. | : | 1:19-CV-05745-SCJ-CCB |

## ORDER AND FINAL REPORT AND RECOMMENDATION

Movant Cipriano Vargas, confined at United States Penitentiary Lompoc in Lompoc, California, filed a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255. (Doc. 138.) Respondent filed a response in opposition to the motion. (Doc. 143.)

For the reasons stated below, it is **ORDERED** that Movant's motion to amend (Doc. 150) be **DENIED**, and it is **RECOMMENDED** that the instant motion to vacate (Doc. 138) be **DENIED**.

**I.   BACKGROUND**

In 2016, Movant was indicted on a charge of conspiracy to possess with intent to distribute methamphetamine in violation of 21 U.S.C. § 846. (Doc. 1.) In 2017, pursuant to a written plea agreement, Movant pleaded guilty to the charge. (Doc. 81.) However, he subsequently moved to withdraw his guilty plea, which the Court denied. (Doc. 105 at 4-11.) Movant was sentenced to 180 months of

imprisonment. (Doc. 88.) On direct appeal, the Eleventh Circuit affirmed the denial of Movant's motion to withdraw his guilty plea. *United States v. Vargas*, 737 F. App'x 993 (11th Cir. 2018).

Movant subsequently filed the instant § 2255 motion raising the following claims:

(1) Movant received ineffective assistance of trial counsel when counsel failed to ensure that Movant understood the consequences of the plea and the true nature of the charges;

(2) Movant's guilty plea was not made intelligently or voluntarily; and

(3) Movant received ineffective assistance of trial counsel when counsel failed to

  (a) ensure that the trial court complied with U.S.S.G. § 1B1.3; and

  (b) discuss the presentence report (PSR) with Movant.

(Doc. 138 at 4-7, 13-18.) Movant also filed a motion to amend. (Doc. 150.) In his motion, Movant seeks to add a claim that counsel was ineffective for not seeking a competency evaluation and for not seeking a downward departure under U.S.S.G. § 5K2.13 due to Movant's diminished mental capacity. (*Id.* at 2-4.)

## II. DISCUSSION

### A. *Motion to Vacate*

#### 1. *Claim 1*

To prevail on a claim of ineffective assistance of counsel, a prisoner must meet a two-part test established by *Strickland v. Washington*, 466 U.S. 668 (1984). First, he must show that "counsel's performance was deficient." *Khan v. United States*, 928 F.3d 1264, 1272 (11th Cir. 2019) (internal quotation marks omitted). Counsel's performance is deficient only if it falls "below an objective standard of reasonableness." *Id.* (internal quotation marks omitted). "There is a strong presumption that counsel's conduct fell within the range of reasonable professional assistance, and, therefore, counsel's performance is deficient only if it falls below the wide range of competence demanded of lawyers in criminal cases." *Osley v. United States*, 751 F.3d 1214, 1222 (11th Cir. 2014). Second, a prisoner must show that he suffered prejudice as a result of counsel's deficient performance. *Id.* To establish prejudice, a prisoner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* (internal quotation marks omitted). A court need not address both prongs if a prisoner makes an insufficient showing on one. *Id.*

3

"When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." *Tollett v. Henderson*, 411 U.S. 258, 267 (1973). Instead, the defendant "may only attack the voluntary and intelligent character of the guilty plea." *Id.*; *see also United States v. Tome*, 611 F.3d 1371, 1379 (11th Cir. 2010) (explaining that a defendant who validly pleads guilty "waive[s] all challenges to the factual basis underlying that violation and all other non-jurisdictional challenges to it").

"A guilty plea operates as a waiver of important rights, and is valid only if done voluntarily, knowingly, and intelligently, with sufficient awareness of the relevant circumstances and likely consequences." *Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005) (internal quotation marks omitted); *see also Bousley v. United States*, 523 U.S. 614, 618 (1998) ("A plea of guilty is constitutionally valid only to the extent it is voluntary and intelligent." (internal quotation marks omitted)). As a result, when "a defendant pleads guilty to a crime without having been informed of the crime's elements, this standard is not met and the plea is invalid." *Bradshaw*, 545 U.S. at 183. Nevertheless, "a plea's validity may not be collaterally attacked merely because the defendant made what turned out, in retrospect, to be a poor deal." *Id.* at 186.

> The rule that a plea must be intelligently made to be valid does not require that a plea be vulnerable to later attack if the defendant did not correctly assess every relevant factor entering into his decision. A defendant is not entitled to withdraw his plea merely because he discovers long after the plea has been accepted that his calculus misapprehended the quality of the State's case or the likely penalties attached to alternative courses of action.

*Brady v. United States*, 397 U.S. 742, 757 (1970).

In Claim 1, Movant argues that he received ineffective assistance of trial counsel when his attorney failed to ensure that Movant understood the consequences of the plea and the true nature of the charges. (Doc. 138 at 4, 13-15.)

Movant's claim is contradicted by the record. A Spanish language interpreter was present at Movant's plea hearing. (*See* Doc. 103 at 2-3.) At the hearing, the Court verified Movant's signature on the plea agreement. (*Id.* at 3.) Counsel told the Court that the interpreter interpreted the plea agreement and other documents, and Movant said that he understood them. (*Id.* at 4-5.) Movant recognized that his guilty plea could lead to his removal from the United States and denial of future entry. (*Id.* at 5-6.) Movant acknowledged that he would be waiving several important rights by pleading guilty, including the right to a jury trial, the right to the assistance of counsel during the trial, the presumption of innocence, the right to subpoena and confront witnesses, the right to testify or not testify, and the right against self-incrimination. (*Id.* at 6-8.) Movant further stated that nobody used any force or threatened to use force against him to make him

plead guilty and that he was pleading guilty out of his own free will. (*Id.* at 8-9.) He confirmed that nobody promised anything to induce him to enter into the plea agreement. (*Id.* at 12.)

Movant's counsel stated that he did not make any promises of a particular sentence in the event of a guilty plea. (*Id.* at 13.) Both Movant and counsel agreed that they had had sufficient time to discuss matters before entering a plea of guilty. (*Id.* at 14.) Movant stated that he was satisfied with counsel's representation in his case. (*Id.*) Movant confirmed that he understood the charge against him. (*Id.* at 15.) Specifically, he engaged in this colloquy with the Court:

> Q. In your own words, tell me what you understand you are charged with doing.
>
> . . .
>
> Movant: Well, that I participated in a conspiracy.
>
> Q. Okay. Conspiracy to do what?
>
> A. To do some meth, methamphetamine.
>
> . . .
>
> Movant: 500 grams.

(*Id.* at 15-16.) Movant further understood the maximum penalty and fine for the offense to which he was pleading guilty, and he acknowledged that nobody would know the range of his sentence under the Sentencing Guidelines until a presentence report (PSR) was completed. (*Id.* at 16-17.) He also confirmed that he

6

understood that the Court could impose a sentence more or less severe than that recommended by the Guidelines. (*Id.* at 17.) Movant stated that he understood he was giving up his right to appeal his sentence or conviction except in limited circumstances. (*Id.* at 17-18.)

The Government recounted the factual basis for the charge. (*Id.* at 19–22.) The prosecutor detailed Movant's role in leading a group of individuals who conspired to distribute drugs, including that "he instructed others . . . to secure materials to process methamphetamine for distribution, negotiated the exchanges of drugs and money by phone and collected and delivered drugs and money from customers and [met] with suppliers and their couriers to pick up drugs for distribution." (*Id.* at 19–20.) The Government described intercepted calls between Movant and drug suppliers, as well as calls between Movant and his co-conspirators about the poor quality of a particular batch of methamphetamine and steps they were taking to fix it. (*Id.* at 20–21.) Movant agreed with the Government's description and confirmed that he was in fact guilty of the charge against him. (*Id.* at 22.) The Court found that Movant understood the charge and the consequences of his guilty plea, that he was making his plea voluntarily and intelligently, and that a sufficient factual basis supported the plea. (*Id.* at 23-24.)

In light of the statements he made at the plea hearing, Movant has not shown that he did not understand the nature of the charge and the consequences

7

of the plea, or that his counsel was somehow deficient in failing to explain those things. Movant's statements at his plea hearing clearly show that he understood the charge against him and the consequences of his plea. As the Court stated, "I heard nothing in that plea colloquy that led me to believe that you were not involved in this crime, that you did not commit the crime as stated in the elements outlined by [the Government]." (Doc. 105 at 10.) "Solemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). Movant has not shown anything to overcome that presumption.

Movant asserts that his attorney did not use a translator to explain the plea agreement. (Doc. 138 at 14.) Yet at the plea hearing, he affirmatively agreed to the contrary:

> The Court: Were you able to read the documents and particularly the guilty plea and plea agreement and the other documents Mr. Strongwater gave you and understand them?
>
> Movant: Well, read it? How is that? I don't understand?
>
> The Court: Could you read the English? . . . Do you understand English?
>
> Counsel: No, your honor. We interpreted all the documents.
>
> Movant: No, I did not.
>
> The Court: Okay. So, Mr. Strongwater, it is my understanding that the interpreter interpreted all of the documents for Mr. Vargas that you presented to him.
>
> Counsel: That's correct, your honor.

8

> The Court: And Mr. Vargas, did you understand what was explained to you in those documents?
>
> Movant: Yes, yes.

(Doc. 103 at 4–5.) Movant further offers several instances where he alleges that counsel gave him improper advice, generally about things related to sentencing. For example, he contends that counsel never read or explained the PSR and represented that he would receive one year off his sentence for participation in the Residential Drug Abuse Program. (Doc. 138 at 14). Yet Movant told the Court at sentencing that he had reviewed the PSR with counsel, (Doc. 105 at 12–13) and at the plea hearing that he understood that his sentence would be determined at a later time by the Court and that nobody made any promises to him to get him to enter into the plea agreement, (Doc. 103 at 12, 17–19.) All told, Movant points to nothing to suggest that his attorney somehow failed to make him aware of the nature of the charges or the consequences of pleading guilty. Consequently, counsel did not perform deficiently, and Movant is not entitled to federal habeas relief as to this claim. *See Khan*, 928 F.3d at 1272.

### 2. Claim 2

"A defendant generally must advance an available challenge to a criminal conviction on direct appeal or else the defendant is barred from raising that claim in a habeas proceeding." *Granda v. United States*, 990 F.3d 1272, 1286 (11th Cir.

9

2021) (brackets and internal quotation marks omitted), *cert. denied*, 142 S. Ct. 1233 (2022); *see also Lynn v. United States*, 365 F.3d 1225, 1243 (11th Cir. 2004) (explaining that "the procedural default rule does not depend on whether a movant never filed a direct appeal or appealed but raised different issues"). Such a claim is procedurally defaulted unless the defendant can "(1) show cause to excuse the default *and* actual prejudice from the claimed error, or (2) show that he is actually innocent" of the conviction. *Granda*, 990 F.3d at 1286.

In Claim 2, Movant argues that his guilty plea was not made intelligently or voluntarily. (Doc. 138 at 5, 15-16.) He contends that he did not understand the nature of the charges and that he pled to facts that were not true. (*Id.* at 15–16). However, this claim is procedurally defaulted because it could have been raised on direct appeal, but Movant did not do so. *See Bousley*, 523 U.S. at 621 (noting that "the voluntariness and intelligence of a guilty plea can be attacked on collateral review only if first challenged on direct review"). Movant has not shown cause for his default,[1] and the issue of prejudice need not be considered. Movant also has not presented proof of actual innocence. Accordingly, this claim is procedurally defaulted. *See Granda*, 990 F.3d at 1286.

---

[1] Insofar as Movant could show cause for his default by presenting a claim of ineffective assistance of counsel, as discussed above with respect to Claim 1, Movant has failed to show that counsel was ineffective.

10

3.  *Claim 3*

In Claim 3, Movant argues that he received ineffective assistance of trial counsel when his attorney failed to (a) ensure that the trial court complied with U.S.S.G. § 1B1.3, which concerns relevant conduct, and (b) discuss the PSR with Movant. (Doc. 138 at 6–7, 16-18.)

With respect to Claim 3(a), Movant argues that he would have received a lower sentence had counsel performed his duties properly. (*Id.* at 16.) In particular, Movant states that he repeatedly denied involvement with the Mexican organization behind the drug distribution such that "the drug quantity potentially attributed to him was negligible." (*Id.*) Furthermore, he states that he told counsel that he did not enter into drug transactions with the alleged coconspirators and that the conversations overheard by the Government were actually Movant engaging in automobile sales, rather than drug transactions. (*Id.*) However, Movant is barred from raising either of these contentions on habeas review because they relate to the factual basis of his plea. As noted above, a defendant who validly pleads guilty "waive[s] all challenges to the factual basis underlying that violation and all other non-jurisdictional challenges to it." *Tome*, 611 F.3d at 1379. The Government's factual basis alleged that "[t]hrough a series of Title III intercepted telephone calls the Government discovered that the defendant received methamphetamine in liquid form from suppliers in Mexico

11

and then used other workers to process the methamphetamine from a liquid to a solid for distribution." (Doc. 103 at 20.) Furthermore, according to the Government's factual basis,

> [t]he GBI crime lab determined that the solid material contained 692.99 grams of a mixture and substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, with a purity level of 77.1 percent plus or minus four percent. Thus, the actual amount of actual methamphetamine found in Sanchez's home and attributable to the defendant is at least 505.88 grams of actual methamphetamine.

(*Id.* at 22.) Movant agreed with the Government's summary of what he did. (*Id.*) Movant validly pleaded guilty and therefore may not challenge the factual basis of his plea, whether directly or as applied to his sentencing. *See Tome*, 611 F.3d at 1379. Thus, the PSR was not incorrect to attribute 505.88 grams of methamphetamine to Movant in calculating the applicable drug quantity. (*See* Doc. 94 at 18); U.S.S.G. §§ 1B1.3(a), 2D1.1(c)(3).[2] Consequently, Movant has not

---

[2] Movant's claim also fails because he stipulated to these facts in his plea agreement. In particular, according to the plea agreement, "[t]he Government agrees to recommend and the Defendants agrees that: . . . b. A conservative estimate of the criminal activity undertaken by the Defendant and others acting in concert with Defendant involved at least 500 grams but less than 1.5 kilograms of actual Methamphetamine, all of which was reasonably foreseeable to the Defendant." (Doc. 81-1 at 5.) The plea agreement further provided that "the parties agree to recommend that the Defendant receive a two-level downward variance at sentencing if the Defendant receives the 4-level upward adjustment pursuant to Section 3B1.1(a)." (*Id.* at 7.) "A defendant who stipulates to facts as part of a written plea agreement also waives challenges to the district court's reliance on those facts." *United States v. Scott*, 657 F.3d 639, 640 (7th Cir. 2011);

shown prejudice, and Movant is not entitled to federal habeas relief as to this claim. *See Khan*, 928 F.3d at 1272.

Finally, with respect to Claim 3(b), Movant contends that counsel was ineffective because he never discussed the PSR with Movant and therefore was unable to object to the portions of the PSR that were incorrect. (Doc. 138 at 17-18.) However, this claim is belied by the record. At sentencing, a Spanish language interpreter was present. (*See* Doc. 105 at 2.) Movant acknowledged that he reviewed the PSR with his counsel. (*Id.* at 12-13.) Counsel confirmed that he reviewed each paragraph of the PSR with Movant through an interpreter. (*Id.* at 13.) Counsel further stated that he had "a general conversation about what the conspiracy was, what the underlying evidence was, as well as reviewing Mr. Vargas's personal history, finally talking about the various enhancements and Sentencing Guideline calculations." (*Id.*) Movant did not object to this characterization from counsel. As noted earlier, "[s]olemn declarations in open

---

*accord United States v. Serrano-Beauvaix*, 400 F.3d 50, 54 (1st Cir. 2005); *United States v. Barrett*, 173 F.3d 682, 684 (8th Cir. 1999) ("A defendant may not challenge an application of the Guidelines to which he agreed in a plea agreement (unless he proves the agreement invalid or succeeds in withdrawing from it)."); *see also United States v. Laslie*, 716 F.3d 612, 615 (D.C. Cir. 2013) (concluding that the defendant waived his Sentencing Guidelines argument based on the stipulation in his plea agreement and his subsequent conduct). Having agreed in his plea agreement that he was engaged in drug activity involving between 500 grams and 1.5 kilograms of actual methamphetamine, Movant may not now claim otherwise without showing that the plea agreement is invalid, which he has not shown.

13

court carry a strong presumption of verity." *Blackledge*, 431 U.S. at 74. Movant expressly confirmed in open court that he had reviewed the PSR with counsel. (Doc. 105 at 12.) Movant's protestations in this § 2255 action to the contrary, Movant has not shown anything to overcome the presumption that his statements at his sentencing hearing were and are true.[3] Consequently, counsel did not perform deficiently, and Movant is not entitled to federal habeas relief as to this claim. *See Khan*, 928 F.3d at 1272.

B.     *Motion to Amend*

Although a court should freely give leave to amend, Fed. R. Civ. P. 15(a)(2), leave to amend is not necessary when amendment would be futile, *Wade v. Daniels*, 36 F.4th 1318, 1328 (11th Cir. 2022). In his motion to amend, Movant seeks to add a claim ("Claim 4") that counsel was ineffective for not seeking a competency evaluation and for not seeking a downward departure under U.S.S.G. § 5K2.13 due to Movant's diminished mental capacity. (Doc. 150 at 2-4.) Respondent opposes the motion, contending (among other things) that Claim 4 is time barred because it was raised more than one year after Movant's conviction became final

---

[3] In any event, Movant argues that counsel's failure to review the PSR with Movant resulted in his failure to object to the characterization of automobile transactions as drug transactions, (Doc. 138 at 18), but as discussed above, Movant is barred from raising this claim.

and does not otherwise relate back to the original § 2255 motion. (Doc. 168 at 4-7.)[4]

An amendment to a pleading will relate back to the date of the original pleading when "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). In the habeas context, this rule's "same 'conduct, transaction, or occurrence'" requirement does not mean "same 'trial, conviction, or sentence.'" *Mayle v. Felix*, 545 U.S. 644, 664 (2005). Instead, courts must apply the requirements of Rule 15 to habeas cases as they would civil cases. *Id.* Thus, when the facts in the original complaint do not put a party on notice that new claims might be asserted, "but the new claims instead involve separate and distinct conduct, such that the plaintiff would have to prove completely different facts than required to recover on the claims in the original complaint, the new claims do not relate back." *Caron v. NCL (Bahamas), Ltd.*, 910 F.3d 1359, 1368 (11th Cir. 2018) (brackets and internal quotation marks omitted).

---

[4] The Government has filed a motion to seal Exhibit A of its response in opposition to the motion to amend because the exhibit contains Movant's personal identifying and health information. (Doc. 169). That motion is **GRANTED**. To the extent the Government seeks to seal the motion to seal, as well as the order granting the motion to seal, that request is **DENIED**—there is nothing in the motion or this order revealing the information contained in Exhibit A. As such, only Exhibit A (which is Doc. 169-1) itself needs to be under seal.

Instead, to relate back, the original and amended pleadings must "state claims that are tied to a common core of operative facts." *Mayle*, 545 U.S. at 664.

Here, Movant's claims of ineffective assistance of counsel in Claim 4, related to his alleged diminished mental capacity, do not relate back to Claims 1 and 3 of his original § 2255 motion. In Claim 1, Movant's argument concerns his alleged lack of understanding of the consequences of his guilty plea because he speaks only Spanish, but his counsel "often held consultations with a person to translate the discussions into Spanish; no translator assisted with converting the plea agreement provisions from English to Spanish." (Doc. 138 at 14.) In Claim 3, he contends that counsel did not consult with him properly during sentencing. (*Id.* at 16-18.) Neither of these claims involve diminished capacity, and for Movant to prevail on Claim 4, he would need to "prove completely different facts than required to recover on the claims in the original complaint." *Caron*, 910 F.3d at 1368 (internal quotation marks omitted). Thus, Claim 4 does not relate back to the original § 2255 motion. As a result, the Court must consider whether Claim 4, standing alone, would be timely.

Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), a § 2255 motion is subject to a one-year statute of limitations. 28 U.S.C. § 2255(f). The one-year period runs from the latest of the dates on which (1) the movant's convictions became final; (2) a governmental impediment to filing the movant's

federal habeas motion was removed; (3) a constitutional right on which the movant relies was recognized by the Supreme Court of the United States, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or (4) the movant, with due diligence, could have discovered the facts supporting his claims. 28 U.S.C. § 2255(f)(1)-(4).

Based on a review of Claim 4, there is no indication that § 2255(f)(2) or (3) would apply. With respect to § 2255(f)(1), the Eleventh Circuit issued its opinion on September 19, 2018. Movant's conviction became final on December 19, 2018, when the 90-day time limit to file a petition for writ of certiorari in the Supreme Court of the United States expired. *See Clay v. United States*, 537 U.S. 522, 525 (2003) (holding that "a judgment of conviction becomes final when the time expires for filing a petition for certiorari contesting the appellate court's affirmation of the conviction"); Sup. Ct. R. 13(1). Petitioner then had one year, until December 19, 2019, to raise Claim 4 in this Court. *See* § 2255(f)(1). Movant, however, did not file his motion to amend until June 29, 2020. (Doc. 150.) Claim 4 is therefore untimely by over six months.

Claim 4 is also untimely under § 2255(f)(4). Movant claims to suffer from diminished capacity, but he does not explain why he could not have discovered this fact earlier. He contends that "[e]vidence of diminished capacity is replete in these proceedings," (Doc. 150 at 3), but this undercuts any argument that Movant

acted with due diligence in discovering this fact, as such evidence would have been apparent in 2017 when he pleaded guilty, well before the expiration of the one-year statute of limitations. Thus, § 2255(f)(4) does not save Movant's claim.

Nevertheless, the limitations period in § 2255(f) is subject to equitable tolling. *Holland v. Florida*, 560 U.S. 631, 645 (2010); *Jones v. United States*, 304 F.3d 1035, 1039 (11th Cir. 2002). "[A] petitioner is entitled to equitable tolling only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Holland*, 560 U.S. at 649 (internal quotation marks omitted). Here, Movant is not entitled to equitable tolling because he has not shown that he pursued Claim 4 diligently and that some extraordinary circumstance occurred during the one-year period that prevented him from filing a timely claim. Thus, Claim 4 is untimely, and as a result, amendment would be futile. Accordingly, Movant's motion to amend (Doc. 150) is **DENIED**.[5]

### III.   CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11 of the Rules Governing Section 2255 Cases, "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. . . . If the court issues a certificate, the court must

---

[5] The Court elects not to reach the Government's arguments regarding the merits of this claim or its contention that the claim is procedurally barred.

state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." Section 2253(c)(2) states that a certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." A substantial showing of the denial of a constitutional right "includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotation marks omitted).

> When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim . . . a certificate of appealability should issue only when the prisoner shows both that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.

*Jimenez v. Quarterman*, 555 U.S. 113, 118 n.3 (2009) (citing *Slack*, 529 U.S. at 484) (internal quotation marks omitted).

It is **RECOMMENDED** that a certificate of appealability be **DENIED** because resolution of the issues presented is not debatable. If the District Judge adopts this recommendation and denies a certificate of appealability, Movant is advised that he "may not appeal the denial but may seek a certificate from the

19

court of appeals under Federal Rule of Appellate Procedure 22." 28 U.S.C. foll. § 2255, Rule 11(a).

IV. **CONCLUSION**

For the reasons stated above, it is **ORDERED** that Movant's motion to amend (Doc. 150) be **DENIED**, and it is **RECOMMENDED** that the instant motion to vacate (Doc. 138) be **DENIED**. The Government's motion to seal Exhibit A (Doc. 169) is **GRANTED IN PART** and **DENIED IN PART**. The exhibit itself, which is Doc. 169-1, is **SEALED**. The motion to seal, which is Doc. 169, and this order, are not sealed.

The Clerk is **DIRECTED** to terminate the referral of the civil case, No. 1:19-CV-5745-SCJ-CCB.

**IT IS SO ORDERED AND RECOMMENDED**, this 15th day of February, 2023.

_____
CHRISTOPHER C. BLY
UNITED STATES MAGISTRATE JUDGE